UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA,

      v.

LUKE MARSHALL WENKE,

      Defendant.

───────────────────────────────

22-CR-35 (JLS)

## DECISION AND ORDER OF COMMITMENT

As detailed below, the Court finds by a preponderance of the evidence that Defendant Luke Marshall Wenke is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility.

## BACKGROUND

### I. PROCEDURAL HISTORY

Wenke was indicted on March 15, 2022, for cyberstalking and making interstate threats. Dkt. 8. He pled guilty to cyberstalking on April 18, 2022 (Dkt. 24), and this Court sentenced him on August 18, 2022, to eighteen months of imprisonment and three years of supervised release. Dkt. 41. Upon release, Wenke violated his supervised release. His initial appearance was held on October 4, 2023. Dkt. 78. On November 7, 2023, he pled guilty to Charge 5, and is now awaiting sentencing. Dkt. 95.

At a status conference on January 30, 2024, the Court ordered Wenke to undergo a psychiatric evaluation with Dr. Corey M. Leidenfrost.[1] See Dkt. 113–15. The Probation department facilitated the evaluation and filed Dr. Leidenfrost's report under seal on April 2, 2024. Dkt. 113, 122.

The Court then ordered a hearing pursuant to 18 U.S.C. §§ 4244 and 4247, and provided defense counsel with an opportunity to arrange for an alternative expert to conduct a separate evaluation. Dkt. 125. The hearing was initially set for October 17, 2024. Dkt. 128.

On July 25, 2024, defense counsel filed a motion, pursuant to 18 U.S.C. §§ 4241 and 4247, to determine Wenke's competency and for a psychiatric evaluation. Dkt. 140. The Court held a status conference on July 30, 2024, where it granted the motion and entered an order—directing, *inter alia*, that Wenke undergo a psychiatric examination and that he be committed to the Bureau of Prisons ("BOP") for the evaluation.[2] See Dkt. 143–44. The Court subsequently converted the hearing, which had been set pursuant to section 4244, to a status conference. Dkt. 151.

---

[1] The parties agreed that Dr. Leidenfrost would evaluate Wenke. See Dkt. 113.

[2] At the parties' request, the Court issued an amended order on September 18, 2024. Dkt. 152–53. On September 30, 2024, BOP requested a fifteen-day extension to complete the evaluation, which the Court granted. Dkt. 154, 156. Wenke's evaluation period started on September 4, 2024. Dkt. 154.

BOP's competency report was filed under seal on November 14, 2024. Dkt. 164. Dr. Kaitlyn Nelson drafted the report, under the supervision of Dr. Robin Watkins. *Id.* Dr. Nelson and Dr. Watkins concluded that Wenke is competent. *Id.* at 25–26.[3]

Based on this, the Court also found Wenke competent, under 18 U.S.C. § 4241, but determined that there remained reasonable cause to believe that Wenke may be suffering from a mental disease or defect, under 18 U.S.C. § 4244. Dkt. 166. At the direction of this Court, the parties contacted Dr. Leidenfrost to ask whether he could supplement his prior report to opine as to the statutory standard under 18 U.S.C. §§ 4244(b) and 4247(c). *Id.* Dr. Leidenfrost agreed and met again with Wenke, this time remotely. *See* Dkt. 169; Dkt. 175, at 1. His supplemental report was filed under seal on January 14, 2025. Dkt. 175.

The parties appeared for a section 4244 evidentiary hearing on February 18, 2025. Dkt. 182. Dr. Leidenfrost testified. *Id.* The hearing continued April 10, 2025, where Dr. Watkins and Dr. Nelson both testified. Dkt. 190. The parties submitted post hearing briefs on April 18, 2025. *See* Dkt. 192–93.

## II.   THE HEARING

Dr. Leidenfrost testified based on his two separate reports and two evaluations of Wenke. *See* Dkt. 122, 175. In his first report, he concluded that Wenke is suffering from a bipolar or schizoaffective disorder. Dkt. 122, at 21–22. Dr. Leidenfrost further opined that Wenke is at a high risk for future violence,

---

[3] The page numbers referenced refer to the CM/ECF pagination.

3

serious physical harm, and imminent violence, due to an underlying mental disease or defect—here, bipolar or schizoaffective disorder. *See id.* Dr. Leidenfrost based his findings on his evaluation of Wenke, documents from the record, Wenke's social media, and the letters Wenke has written to this Court. *Id.* at 2–3.

The factors underlying Dr. Leidenfrost's opinions from the first report remain unchanged in his second report, but he updated Wenke's diagnosis to "[s]chizoaffective disorder, bipolar type" after evaluating Wenke again. *See* Dkt. 175, at 4, 6–7; Dkt. 186, at 39. He further determined—and so testified—that Wenke is in need of custody for care or treatment, in a suitable facility, for his mental disease or defect, because: (1) Wenke is presently suffering from a mental disease or defect; (2) he has no insight regarding his symptoms of serious mental illness; (3) he will likely refuse to take psychiatric medication; and (4) his symptoms significantly influence his high risk for future and imminent violence. *See id.* at 7.

Dr. Nelson and Dr. Watkins testified based on their report prepared pursuant to 18 U.S.C. § 4241. *See* Dkt. 164. They opined that Wenke presented symptoms consistent with a personality disorder or autism spectrum disorder because he becomes fixated on his interests and devotes significant efforts in making his opinions and thoughts known. *Id.* at 25. As noted above, they found Wenke competent to proceed in his case because he demonstrated the ability to assist effectively in his defense. *Id.*

4

## DISCUSSION

### I. LEGAL STANDARD

Prior to sentencing, the court may order a hearing "on its own motion, if it is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4244(a).

Before such a hearing, the court has discretion to order a psychiatric or psychological examination and report. *See id.* 4244(b) ("Prior to the date of the hearing, the court *may* order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court . . . .") (emphasis added). If the court orders an examination and report under this section, the report and examination must conform to the requirements set forth in sections 4247(b) and 4247(c). *See id.*

After the hearing, if the court finds by a preponderance of the evidence that "the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment," the court shall then "commit the defendant to the custody of the Attorney General." *Id.* § 4244(d).

## II. ANALYSIS

Here, after finding Wenke competent, the Court determined that there was reasonable cause to initiate proceedings, *sua sponte*, under section 4244. *See* Dkt. 166. The Court did not order a new report from BOP, like it did under section 4241,[4] but Dr. Leidenfrost supplemented his previous report—opining as to the standard in section 4244. Dkt. 169, 175. The evidentiary hearing has now concluded, and the parties have submitted post-hearing briefs. *See* Dkt. 190, 192–93.

For the below reasons, the Court finds by a preponderance of the evidence that Wenke is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility. *See* 18 U.S.C. § 4244(d).

Dr. Leidenfrost testified credibly at the hearing. And his reports are supported by a fulsome factual basis. He evaluated Wenke himself, on two occasions, and he relied on his own research, observations, evaluation, and the docket, including the numerous letters Wenke has sent to this Court. Dr. Leidenfrost concluded that Wenke "is in need of custody for care or treatment, in a suitable facility, for his mental disease or defect," which is "[s]chizoaffective

---

[4] In making this determination, the Court considered Wenke's time in custody. At that time, he had approximately eleven months left before reaching his statutory maximum. The Court had concerns about the time it would take to obtain another report through BOP, including round trip travel out of the district.

disorder, bipolar type." Dkt. 175, at 4, 7; Dkt. 186, at 39. The Court gives appropriate weight to his testimony and report to support its finding.

Although there are some differences, as discussed below, the 4241 BOP report and Dr. Leidenfrost's 4244 report—and corresponding testimony—do not contradict each other because they are based on two separate standards. *See United States v. Chaudhry*, 646 F. Supp. 2d 1140, 1149 (N.D. Cal. 2009) ("In sum, the [c]ourt holds that 18 U.S.C. § 4241 and § 4244 apply to independent inquiries."). Dr. Watkins confirmed this during her testimony:

> **THE COURT:** Dr. Watkins, in the context of this 4244 hearing that we're in, my job is to decide whether Mr. Wenke is presently suffering from a mental disease or defect and whether he should, in lieu of being sentenced to imprisonment, instead be committed to a suitable facility for care or treatment. That's the question I have to ask. Do you have an opinion on that issue?
>
> **DR. WATKINS:** I do not currently have an opinion on that issue, only because I didn't do that type of evaluation.
>
> **THE COURT:** If you were asked to do the 4244 evaluation, in addition to or instead of or now, what would you do differently that perhaps you hadn't done already?
>
> **DR. WATKINS:** I would conduct a more thorough inquiry into, I guess, the history and course of symptoms. We would do a lot more diagnostic differential diagnosis. I guess, between—I believe we listed a number of diagnostic possibilities and some tentative diagnoses. I think we would do more to try to pars[e] out exactly what's going on with him diagnostically, to better determine what the most appropriate treatment recommendations would be at this time.
>
> **THE COURT:** With everything that you know about Mr. Wenke, and—and acknowledging the limits of your 4241 evaluation, is it possible, knowing what you know now, that you could ultimately conclude under 4244, that he is suffering from a mental disease or defect[,] [a]s a result

of which, he is in need of custody for care or treatment in a suitable facility?

**DR. WATKINS:** Yes. Your Honor, that's possible.

Dkt. 191, at 42–43.

Thus, the finding of competency does not negate a determination that Wenke is nevertheless suffering from a mental illness that requires treatment.

Wenke argues that, because a schizoaffective disorder diagnosis requires delusions, and the BOP doctors found that Wenke did not exhibit overt delusions, Dr. Leidenfrost's diagnosis is skewed. *See* Dkt. 192, at 6–8. Although the experts disagree about whether Wenke suffers particular delusional beliefs (Dkt. 186, at 44), Dr. Leidenfrost's conclusions remain well supported.

Moreover, when diagnosing Wenke, Dr. Leidenfrost considered delusional beliefs that Dr. Nelson and Dr. Watkins did not fully evaluate—such as Wenke's fixation on particular individuals, or erotomanic delusions—because the scope of BOP's evaluation was limited to present-based competency. *See* Dkt. 186, at 29–30; *see also* Dkt. 193, at 6–10. Dr. Watkins testified that it was not clear whether Wenke's relationship with R.T. was an erotomanic delusion and, as a result, found that it was not an overt delusion (Dkt. 191, at 36), but she also stated: "I wasn't doing a risk assessment or in depth inquiry into the dynamics involved in any of these relationships, because our focus was primarily on competency and present focused competency." *Id.* at 38. Dr. Watkins testified that she would need to evaluate Wenke's symptoms further to make a diagnosis under section 4244. *Id.* at

29. Beyond that, the evaluators disagree about delusions but, given the different standards and overall credibility assessment, the Court remains convinced by Dr. Leidenfrost's conclusions.

Based on all of the hearing evidence, the Court finds that Wenke is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, in lieu of sentencing. This conclusion *is corroborated by* the Court's lengthy involvement in the case, the facts of the case, Wenke's violation history, his letters to the Court,[5] and the Court's courtroom observations of, and interactions with, Wenke.

## CONCLUSION

This Court spent months reflecting on this issue, and has considered the testimony, reports, post-hearing briefs, and the record in rendering this decision. For the reasons set forth above, the Court finds by a preponderance of the evidence that Luke Wenke is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care of treatment in a suitable facility pursuant to 18 U.S.C. § 4244.

---

[5] *See* Dkt. 69, 71, 86, 87, 92, 97, 116, 117, 118, 119, 120, 121, 124, 126, 127, 129, 132, 133, 134, 135, 136, 137, 138, 139, 142, 145, 146, 147, 148, 149, 150, 155, 157, 160, 162, 165, 167, 168, 170, 174, 189.

## ORDER OF COMMITMENT

For the reasons set forth above, the Court finds by a preponderance of the evidence that Defendant is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility pursuant to 18 U.S.C. § 4244. Accordingly, it is hereby

ORDERED that, in lieu of being sentenced to imprisonment, Wenke shall be committed to the custody of the Attorney General; and it is further

ORDERED that the Attorney General shall hospitalize Wenke for care or treatment in a suitable facility; and it is further

ORDERED that such commitment constitutes a provisional sentence of imprisonment to the maximum term authorized by law for the violation of supervised release to which Wenke admitted; and it is further

ORDERED that if the director of the facility in which Wenke is hospitalized determines that Wenke has recovered from his mental disease or defect to such an extent that he is no longer in need of custody for care or treatment in such a facility, the director of the facility shall promptly file a certificate to that effect with the Clerk of Court. And if, at the time of filing the certificate, the provisional sentence imposed has not expired, the Court will proceed to sentencing and may modify this provisional sentence; and it is further

ORDERED that if Wenke's sentence is about to expire and the director of the facility in which Wenke is hospitalized certifies that Wenke is presently suffering from a mental disease or defect as a result of which his release would create a

substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, the director of the facility shall transmit such certificate to the Clerk of Court.

SO ORDERED.

Dated: April 23, 2025
Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE